1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   LARRY ZUNIGA,                                CASE NO. 1:09-cv-01208-AWI-BAM PC

10                    Plaintiff,
                                                  PRETRIAL ORDER
11         v.
                                                  MOTIONS IN LIMINE DEADLINE: February 13,
12   CHRIS JORDAN, et al.,                        2012

13                    Defendants.                 OPPOSITION   TO   MOTIONS   IN   LIMINE
                                                  DEADLINE:  February 23, 2012
14
                                                  MOTIONS IN LIMINE DATE:   February 28,
15                                                2012, at 8:30 a.m. in Courtroom 2 (AWI)

16                                                TRIAL DATE:  February 28, 2012, at 8:30 a.m. in
                                                  Courtroom 2 (AWI)
17
                                                  ORDER DENYING PLAINTIFF'S MOTION FOR
18                                                ATTENDANCE OF WITNESSES, MOTION TO
                                                  COMPEL, MOTION FOR APPOINTMENT OF
19                                                COUNSEL, AND MOTION NOT TO DISMISS
                                                  DOE DEFENDANT (ECF No. 51)
20
                                                  ORDER  DISMISSING  DOE  DEFENDANT
21                                                FROM ACTION (ECF Nos. 37)

22   _____ /

23         This action is proceeding on Plaintiff Larry Zuniga's complaint, filed July 13, 2009.  Larry

24   Zuniga, an inmate in the custody of the California Department of Corrections and Rehabilitation,

25   brings this civil rights action against correctional officials for violations of his civil rights.  Various

26   court orders have been issued during the pendency of this action that have narrowed the remaining

27   legal issues for trial to the following:  whether Defendants Burke, Torres, Henderson, and Jordan are

28

liable to Plaintiff for the use of excessive force in violation of the Eighth Amendment.[1]

The parties have submitted pretrial statements.  Having reviewed the statements and the remainder of the file, the Court now issues the Pretrial Order.

**I.**   **Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct alleged occurred in this judicial district.

**II.**   **Jury Trial**

Defendants timely requested trial by jury.  This action shall be tried by a jury of eight.

**III.**   **Facts and Evidentiary Issues**

**A.**   **Plaintiff's Undisputed Facts**

1.   On March 11, 2009 Kings County jail received information of a hunger strike to occur on March 16, 2009.

2.   On March 14 or 15 Joe Johnson of the Fresno Bee was contacted by Kings County Jail and an article was printed concerning the hunger strike on March 16, 2009.

**B.**   **Defendants' Undisputed Facts**

1.   On March 11, 2009, the Kings County Jail received information that inmates at the jail were planning a hunger strike to begin on March 16, 2009.  Further information was received that "Norteno" inmates were planning to refuse to lock down in their cells when told to do so by jail staff.

2.   Inmates at the jail indeed began a hunger strike on March 16, 2009.  The same day, inmates who were Norteno gang members refused to lock down when instructed to do so.  After repeated refusals to lock down, deputies were required to use appropriate levels of force to gain compliance from the inmates.  As the day progressed, more inmates became resistive and the decision was made to place all inmates on lockdown, i.e., inmates are not provided dayroom, yard, programs/classes or visits.

3.   In the following days, many inmates continued to refuse their meals.  Eventually, inmates

---

[1]The Court shall adopt the spelling of Defendant's name as set forth in Defendants' pretrial statement.

1    were let out for dayroom, however, when some continued to refuse to lock down when told

2    to do so, dayroom was again discontinued.

3   4.    On March 20, 2009, it was determined that the inmates who were refusing to lockdown were

4         all Norteno gang members or associates.  It was thereafter decided that all documented

5         Nortenos would be placed on lockdown.

6   5.    The same day, inmates, including Plaintiff, in pod B4 were refusing to comply with orders

7         to lockdown in their cells despite repeated instructions to do so being given over the

8         intercom.  Repeated instructions to lockdown were also given at the door of the pod by

9         Defendant Henderson. Plaintiff and two other inmates refused to lockdown. After it became

10        apparent that the three inmates were not going to comply with the order to lockdown, a

11        number of officers entered the pod and ordered the inmates to get on the ground so they

12        could be restrained with handcuffs and ankle shackles.  The inmates again refused to get on

13        the ground and were warned that a "block gun" would be utilized if they did not comply.  A

14        block gun fires 37 millimeter rubber batons. After continuing to refuse to get on the ground,

15        Defendant Burke fired the block gun at two of the three inmates, including Plaintiff, who

16        immediately went to the ground.  The third inmate voluntarily went to the ground before

17        Defendant Burke had to fire at him.

18  6.    As soon as all three inmates were face down on the ground, officers approached and

19        handcuffed and shackled them.  They were then taken to medical staff where they were

20        immediately evaluated.  Plaintiff suffered mild bruising and contusions and was treated with

21        analgesics.

22  7.    Plaintiff is a validated Norteno gang member.

23  8.    Plaintiff has been in jail and/or prison since the time of the incident that is the subject of this

24        lawsuit.

25  9.    Plaintiff has felony convictions for sales of controlled substances, assault with a deadly

26        weapon, and participation in a criminal street gang.  Plaintiff also has misdemeanor

27        convictions.

28  10.   Plaintiff has been in the Kings County Jail on five to six occasions.

**B.** **Disputed Facts**

      **1.** **Plaintiff's Disputed Facts**[2]

1.     Injuries, mental/physical pain to Plaintiff.

2.     If force was necessary.

3.     What threats and what is considered a threat and how.

4.     Did Plaintiff make a threat verbally or physically, if so what.

5.     What preparations were prepared and procedures to be taken in accordance to this situation.

6.     Why measures and preparations were not made ahead of time so force/punishment would have to be used.

7.     How many lawsuits are pending or have been heard on Kings County Jail.

8.     The lawsuits filed against Shari Henderson and Sheriff Chris Jordan and other staff pertaining to excessive use of force and cruel and unusual punishment.

9.     How many inmates were shot, dragged, tazed, use of cruel and unusual punishment and excessive use of force.

10.    What is considered a threat to Kings County Jail to use force.

11.    Logs, documents, orders, amount of bullets, pepper balls, rubber bullets, tazings, bean bags, batons, and mace was used from March 16, 2007 until the last date force was used against inmates.

12.    Why dayroom/yard was given.

13.    When two cells were being let out at a time and an inmate was tazed, shot, etc. why they still would let the next cell out after one hour or thirty minutes and repeated force was used.

14.    Logs of all races, inmates that refused to eat during hunger strike and were also shot.

15.    Why the five photographs of injuries were not given upon request.

16.    Why there was a lack of medical attention.

17.    Why mace and batons were not used before lethal force of block gun, rubber bullet, pepper ball gun and tazers were used.

---

[2]Plaintiff's list of undisputed facts that are in dispute are included in this section.

18.   What made the hunger strike a threat when said hunger strike letter did not make any statements that inmates were going to be a threat.

19.   Why article in Fresno Bee was printed.

20.   History of all staff records, 602s, grievance forms, crimes, criminal history, sheriff complaints, etc. ever submitted on all staff involved in said actions who testify.

21.   What threats were made to ignite force/punishment and weapon use.

22.   What are levels of appropriate force by Kings County Jail.

23.   Who said to get down on the ground and cuff up.

24.   Why inmates in Pod B4 only were dragged approximately 150 feet.

### 2.   Defendants' Disputed Facts

1.   Whether the force used against Plaintiff was according to accepted standards in corrections under the circumstances presented to the officers.

2.   The nature and extent of Plaintiff's alleged injuries, if any.

### C.   Disputed Evidentiary Issues

### 1.   Plaintiff's Disputed Evidentiary Issues

1.   Background of Plaintiff's criminal past.

2.   Prior arrest of Plaintiff.

3.   Anyone testifying that does not work at Kings County Jail was not involved in some way with said incident or reports and does not have anything to do concerning said incident.

### 2.   Defendants' Disputed Evidentiary Issues

Defendants anticipate that their pretrial motions in limine will include, but will not be limited to the following:

1.   To preclude evidence that is protected by Penal Code §§ 832.7 and 832.8, Evidence Code §§ 1040 and 1043, and the Defendant officers' rights to privacy.

2.   To preclude evidence regarding Defendants' insurance.

3.   To preclude Plaintiff from making any inquiry, comment or argument before the jury that suggests that jurors should base Plaintiff's damages, if any, on an amount the jurors would charge to endure similar injuries.

5

4.    To preclude Plaintiff from testifying with respect to alleged comments made by jail staff after the subject incident to the effect that they were following orders from Defendant Jordan.

5.    To preclude Plaintiff from testifying with respect to Defendant Torres allegedly apologizing to Plaintiff and stating that he was merely following orders.

**IV.    Special Factual Information**

   **A.    Plaintiff's Factual Information**

1.    Fresno Bee newspaper was contacted and an article was published.

2.    Kings County Jail staff knew ahead of time about the hunger strike and had time to prepare.

3.    Original hunger strike letter ahead of time.

4.    Letting out dayroom and yard under said conditions.

5.    Had time to prepare but used force/weapons.

6.    Did not try to talk or defuse situation with inmates in Kings County Jail.

7.    Safety of inmates was neglected.

8.    Officers apologizing to inmates for shooting them, that they were only following orders.

9.    Officers state they were told only to use force and drag inmates from pod B4.

10.   All video camera, five photographs of wounds, video of incidents occurring to and with inmates from March 16, 2009, through inmate shot, tazed, etc.

11.   Logs of what cells, races, inmates refusing food and all who were shot, tazed, etc.

12.   Officers go through training.

13.   Medical physically and mentally pain, suffering documents.

14.   Medical records, mental records.

15.   Prior remedies disclosed on Kings County Jail write ups to handle situations and grievance forms.

   **B.    Defendants' Factual Information**

On March 11, 2009, a general population inmate housed in Unit B of the Kings County Jail informed a jail nurse that inmates at the jail were planning a hunger strike.  The inmate reported that another inmate slid a letter under his cell door.  The letter discussed the staging of a hunger strike.  When the inmate was interviewed, he stated that the hunger strike was planned for March 16, 2009,

and that inmates were going to "take the dayroom hostage."

A second inmate contacted a floor deputy the same day and confirmed the hunger strike plan. This inmate showed jail staff the original letter that was passed around among the inmates. The letter directed the inmates to begin a hunger strike on March 16, 2009, and instructed them to order enough commissary food to last thirty days. The letter also told the inmates to refuse to lock down when told to do so by jail staff. Inmates were to write their cell numbers on the back of the letter. The cell numbers that were listed on the letter were those of "Norteno" gang members.

On March 11, 2009, the company that delivers commissary items to the Kings County Jail, Fresno Canteen, reported to the jail that they had received the largest commissary order they had ever received for Kings County. This was consistent with the beginning of a hunger strike.

On March 15, 2009, a jail nurse found a request slip in a locked medical box stating, "We're going on strike tomorrow. Please don't let us out to yard; we don't plan on coming back in." Floor deputies also reported that inmates commented to jail staff that they "should probably take tomorrow off."

On March 16, 2009, a hunger strike began. Jail deputies and the Jail Special Emergency Response Team ("SERT") members were put on standby in case the inmates did indeed refuse to lockdown or otherwise attempt to riot. The number of inmates released for dayroom and yard at one time was reduced by half. The same day, inmates refused to lock down after their dayroom time and were warned that force would be used. After repeated refusals to lock down, pepper balls, taser and rubber baton launching systems were utilized to gain compliance. Eventually more inmates became resistive and the decision was made to place all inmates on lockdown, i.e., inmates are not provided dayroom, yard, programs/classes or visits.

Eventually, the number of inmates refusing meals decreased. Inmates were eventually let out for dayroom, however, when some continued to refuse to lockdown when told to do so, dayroom was again discontinued.

On March 20, 2009, it was determined that the inmates that were refusing to lockdown were all Norteno gang members or associates. Those that were questioned admitted that they were Nortenos, and that they would continue to disobey staff. It was decided that all documented Nortenos

would be placed on lockdown. Other non-Norteno inmates began expressing anger towards Nortenos and told staff that they wanted no part of what was taking place. Plaintiff is a validated Norteno gang member.

The same day, inmates, including Plaintiff, in pod B4 were refusing to comply with orders to lockdown in their cells despite repeated instructions to do so being given over the intercom. Repeated instructions to lockdown were also given at the door of the pod by Defendant Shari Henderson. Plaintiff and two other inmates refused to lockdown. After it became apparent that the three inmates were not going to comply with the order to lockdown, a number of officers entered the pod and ordered the inmates to get on the ground so they could be restrained with handcuffs and ankle shackles. The inmates again refused to get on the ground and were warned that a "block gun" would be utilized if they did not comply. A block gun fires 37 millimeter rubber batons. After continuing to refuse to get on the ground, Defendant Burke fired the block gun at two of the three inmates who immediately went to the ground. The third inmate voluntarily went to the ground before Defendant Burke had to fire at him. Pepper balls were also fired during the incident.

As soon as all three inmates were face down on the ground, officers approached and handcuffed and shackled them. They were then taken to medical staff where they were immediately evaluated. Plaintiff suffered mild bruising and contusions and was treated with analgesics.

## V.      Relief Sought

Plaintiff seeks compensatory damages of $52 million and punitive damages of $60 million.

Defendants seek a defense verdict, costs of suit and attorney's fees for defense of this action.

## VI.      Points of Law

### A.      Imposition of Liability Under Section 1983

Under section 1983, Plaintiff is required to prove that each defendant (1) acted under color of state law and (2) deprived him of rights secured by the Eighth Amendment of the United States Constitution. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff must prove that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under section 1983, and each defendant is only liable for his own misconduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49

1  (2009).

2  **B.    Eighth Amendment Excessive Force Claim**

3  The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from

4  the use of excessive physical force.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (per curiam);

5  Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).  What is necessary to show sufficient harm under the

6  Eighth Amendment depends upon the claim at issue, with the objective component being contextual

7  and responsive to contemporary standards of decency.  Hudson, 503 U.S. at 8 (quotation marks and

8  citations omitted).  For excessive force claims, the core judicial inquiry is whether the force was

9  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

10  harm.  Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 7) (quotation marks omitted).

11  Not every malevolent touch by a prison guard gives rise to a federal cause of action.  Wilkins,

12  130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted).  Necessarily excluded

13  from constitutional recognition is the de minimis use of physical force, provided that the use of force

14  is not of a sort repugnant to the conscience of mankind.  Wilkins, 130 S. Ct. at 1178 (quoting Hudson,

15  503 U.S. at 9-10) (quotations marks omitted).  In determining whether the use of force was wanton

16  and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of

17  force, the relationship between that need and the amount of force used, the threat reasonably

18  perceived by the responsible officials, and any efforts made to temper the severity of a forceful

19  response.  Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

20  While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not

21  end it.  Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always violates

22  contemporary standards of decency.  Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9)

23  (quotation marks omitted).  Thus, it is the use of force rather than the resulting injury which

24  ultimately counts.  Wilkins, 130 S. Ct. at 1178.

25  **C.    Qualified Immunity**

26  The doctrine of qualified immunity protects government officials from civil liability where

27  "their conduct does not violate clearly established statutory or constitutional rights of which a

28  reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting

1  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified
2  immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court
3  determines if the facts as alleged state a violation of a constitutional right and if the right is clearly
4  established so that a reasonable official would have known that his conduct was unlawful.  Saucier,
5  533 U.S. at 200.  A district court is "permitted to exercise their sound discretion in deciding which
6  of the two prongs of the qualified immunity analysis should be addressed first in light of the
7  circumstances in the particular case at hand."  Pearson, 129 S. Ct. at 818.  The inquiry as to whether
8  the right was clearly established is "solely a question of law for the judge."  Dunn v. Castro, No. 08-
9  15957, 2010 WL 3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police
10  Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

### D.    Punitive Damages

12  Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a
13  preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008). The
14  jury must find that Defendant's conduct was "motivated by evil motive or intent, or . . . involves
15  reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S.
16  30, 56 (1986).

## VII.   Witnesses

18  The following is a list of witnesses that the parties expect to call at trial, including rebuttal and
19  impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION,
20  MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING
21  THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed.
22  R. Civ. P. 16(e); Local Rule 281(b)(10).

### A.    Plaintiff's Witnesses

24  1.    Plaintiff
25  2.    Defendant Burke
26  3.    Defendant Torres
27  4.    Defendant Henderson
28  5.    Defendant Jordan

**B.** **Defendants' Witnesses**

1. Defendant Mike Burke, Kings County Sheriff's Department

2. Sergeant Chaney, Lemoore Police Department

3. Deputy Clay Crippen, Kings County Sheriff's Department

4. Sgt. C. Flores, Kings County Sheriff's Department

5. Lavonne Frank, Registered Nurse, California Medical Forensic Group

6. Detentions Deputy F. George, Kings County Sheriff's Department

7. Jose Gonzalez

8. Defendant Henderson, Kings County Sheriff's Department

9. Deputy V. Hernandez, Kings County Sheriff's Department

10. Deputy Brett Hershberger, Kings County Sheriff's Department

11. Officer B. Higgins, Lemoore Police Department

12. Defendant Chris Jordan, Kings County Sheriff's Department

13. James Lowa

14. Deputy Jeremy McGill, Kings County Sheriff's Department

15. Deputy T. Padget, Kings County Sheriff's Department

16. Commander Kim Pedreiro, Kings County Sheriff's Department

17. Christeen Pornela, Registered Nurse, California Medical Forensic Group

18. Deputy K. Rogers, Kings County Sheriff's Department

19. Roberta Schutt, Registered Nurse, California Medical Forensic Group

20. Deputy Donna Scilagyi, Kings County Sheriff's Department

21. Parole Agent B. Siino, Hanford Parole Unit/Region 1

22. Sergeant Dan Tolbert, Kings County Sheriff's Department

23. Defendant Eddie Torres, Kings County Sheriff's Department

24. Linda Weesner, Registered Nurse, Kings View Mental Health - California Medical Forensic Group

25. Deputy Tom Wilcox, Kings County Sheriff's Department

26. Sergeant Wilson, Kings County Sheriff's Department

27.     Plaintiff Larry Zuniga

28.     Custodian of records whose authenticity is not stipulated to.

Defendants state that they wish to call an unidentified Custodian of Records.  Because Defendants have not identified the name of the witness, Defendants may not offer substantive testimony from the witness.  If Defendants wish to offer the unidentified witness solely to authenticate documents, Defendants may use the witnesses identified only by title for that limited purpose.

**VIII.   Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**A.     Plaintiff's Exhibits**

1.      All officers' background, grievance forms, lawsuits, sheriff complaints, 602's, criminal history, arrest history of officers that are defendants or testifying as a witness.

2.      All documents, recordings of said incident from March 16, 2009 to last inmate shot/tazed.

3.      All documents, paperwork showing all inmates who refused to eat, got shot/tazed/etc. from March 16, 2009 to last inmate shot/tazed and began to eat again.

4.      All documented procedures of how officers were to handle said situation of hunger strike and refusing to lockdown.

5.      All documents, records, reports written by all officers who were part of or were involved in said incident.

6.      All medical reports on said incident.

7.      All video/cameras/pictures taken of inmates refusing to lockdown from March 16, 17, 18, 19, 20 and until last date inmate was shot/tazed revolving the hunger strike and to lockdown yard seven, hallways, the 2 in pod B4, etc.

8.      Pictures of Plaintiff's wounds.

9.      All Plaintiff's medical records and pictures of every inmate shot/tazed, etc.

10.    All write ups and grievance forms on staff and written on inmates during Kings County Jail stay.

11.    Fresno Bee, dated March 14 and 15, 2009.

12.    Cell logs of all cells who refused to eat and ethnic Kings County Jail housed them as.

13.    List of all inmates and threats made by them.

14.    Report of threat Plaintiff made to be shot and dragged.

15.    All paperwork written/recorded to and towards the incident.

16.    All verbal and written orders given by Sheriff Chris Jordan.

17.    All verbal and written orders each officer was given or instructed to do during every refusal to lockdown.

18.    Government statutory duties, constitutional duties to disclose exculpatory information.

19.    Medication printout of medication effects taken by Plaintiff.

20.    Mental health referral form.

21.    CDC medical records.

22.    Written letters by David Williamson and Eriq Zuniga.

23.    Original complaint pages 1 through 21 to court of said incident that took place and revolves around Plaintiff's claim to incident.

24.    All grievance forms, write ups, memorandums revolving around, to and towards incident.

**B.    Defendants' Exhibits**

1.    Lemoore Police Department records regarding Plaintiff.

2.    California Department of Rehabilitation and Corrections records regarding Plaintiff (including parole records).

3.    Kings County Jail records regarding Plaintiff.

4.    Kings County Sheriff's Department Booking Request Form regarding Plaintiff (10/8/09).

5.    PC 3056 Hold Detainer re: Plaintiff (10/9/08).

6.    Kings County Sheriff's Detentions Division Initial Custody Assessment Scale re: Plaintiff (10/9/08).

7.    Kings County Jail Threat Assessment re: Plaintiff (10/9/08).

8.     Kings County Jail Inmate Administrative/Disciplinary Action re: Plaintiff (1/20/09).

9.     Kings County Jail Inmate Administrative/Disciplinary Action re: Plaintiff (3/22/09).

10.    Kings County Jail Inmate Administrative/Disciplinary Action re: Plaintiff (5/15/09).

11.    Kings County Jail Inmate Administrative/Disciplinary Action re: Plaintiff (11/2/09).

12.    Kings County Jail Inmate Administrative/Disciplinary Action re: Plaintiff (11/30/09).

13.    Memo from Defendant Shari Henderson to Commander Kim Pedreiro re: Possible Inmate
       Hunger Strike/Non-Compliance in Hub with supporting documents (4/2/09).

14.    Kings County Jail Inmate Grievance Form re: subject incident with related documents.

15.    Plaintiff's Complaint filed 7/13/09 (with attachments).

16.    DVD of subject incident.

17.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (10/9/08).

18.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (11/27/04).

19.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (10/25/01).

20.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (3/20/01).

21.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (2/5/01).

22.    Kings County Sheriff's Detentions Division Booking Report re: Plaintiff (4/11/00).

23.    Kings County Sheriff's Department Arrest Report re: 7/9/01 arrest of Plaintiff.

24.    Kings County Sheriff's Department Arrest Report re: 3/20/01 arrest of Plaintiff.

25.    Kings County Sheriff's Department Arrest Report re: 4/16/97 arrest of Plaintiff.

26.    Diagram of jail pod prepared by Plaintiff (Ex. 3 to Deposition of Larry Zuniga).

27.    Photographs of Plaintiff taken after subject incident (4 photos).

28.    California Medical Forensic Group records re: Plaintiff.

29.    Exhibits to deposition of Plaintiff.

       Defendants also reserve the right to introduce exhibits listed by Plaintiff.

**IX.    Discovery Documents To Be Used At Trial**

       Defendants anticipate submitting the following discovery documents:

1.     Plaintiff's response to Request for Production of Documents (Set One) propounded by
       Defendants.

2.      Plaintiff's response to Interrogatories (Set One) propounded by Defendants.

3.      Plaintiff's response to Request for Admissions propounded by Defendants.

4.      Plaintiff's response to Supplemental Interrogatories (Set One) propounded by Defendants.

**X.      Further Discovery or Motions**

      **A.      Motion for the Attendance of Witnesses**

Plaintiff moves for court to contact his witnesses.  In the second scheduling order, issued July 15, 2011, Plaintiff was informed of the procedures for obtaining the attendance of witnesses, both incarcerated and unincarcerated, and the deadlines for filing his motion for the attendance of witnesses.

A motion for the attendance of incarcerated witnesses required Plaintiff to provide the name, address, and prison number of the witness and a declaration showing that the witness has actual knowledge of relevant facts.  Plaintiff's motion for the attendance of incarcerated witnesses was due on or before November 4, 2011.  Plaintiff's motion is untimely and he has failed to provide the information specified in the second scheduling order.

Additionally, Plaintiff was informed that to obtain the attendance of unincarcerated witnesses who refuse to testify voluntarily he needed to notify the court in writing of the names and addresses of the witnesses and submit witness fees and travel expenses by December 2, 2011.  Plaintiff did not file a notification or submit witness fees by December 2, 2011.  Accordingly, Plaintiff's motion for the attendance of incarcerated and unincarcerated witnesses is denied.

      **B.      Motion to Compel**

Plaintiff moves for all evidence that he is seeking to introduce at trial be provided to him.  On April 27, 2010, a discovery and scheduling order issued setting the discovery deadline in this action. Plaintiff was advised in the order that all discovery, including motions to compel, must be completed by the discovery cut-off date.  Plaintiff requested and was granted several modifications of the discovery and scheduling order to extend the discovery cut-off date, and discovery closed in this action on April 29, 2011.  Plaintiff's motion is untimely as it is filed approximately nine months after the discovery cut-off date and on the eve of trial.  Accordingly, Plaintiff's motion to obtain evidence is denied.

1    Even though discovery is closed, all parties are reminded of their continuing obligation to

2    update all discovery responses previously made if that party becomes aware of new information or

3    becomes aware that an answer in a previous response is incomplete or incorrect.  Fed. R. Civ. P.

4    26(e)(1).

5         **C.    Doe Motion**

6         Plaintiff moves for the court to not dismiss the Doe Defendant.  In the discovery and

7    scheduling order issued April 27, 2010, Plaintiff was informed that the deadline to amend pleadings

8    was October 29, 2010.  Plaintiff failed to file an amended complaint.  On August 27, 2011, an order

9    issued for Plaintiff to show cause why the Doe defendant should not be dismissed within thirty days.

10   Plaintiff failed to file a response to the order to show cause.  In his pretrial statement Plaintiff moves

11   for the Doe defendant to not be dismissed from this action because he has been unable to view the

12   video due to being incarcerated.

13        Rule 4(m) of the Federal Rules of Civil Procedure provides, in relevant part:

14

15        If a defendant is not served within 120 days after the complaint is filed, the court - on
          motion or on its own after notice to the plaintiff - must dismiss the action without

16        prejudice against that defendant or order that service be made within a specified time.
          But if the plaintiff shows good cause for the failure, the court must extend the time for
          service for an appropriate period.

17

18        Plaintiff has failed to set forth good cause for his failure to identify the Doe defendant so that

19   the United States Marshal could serve a summons and the complaint.  Accordingly, John Doe is

20   dismissed from this action, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

21        **D.    Motion for Appointment of Counsel**

22        Plaintiff has requested the appointment of counsel.  The United States Supreme Court has

23   ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983

24   cases.  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298,

25   109 S.Ct. 1814, 1816 (1989).  In certain exceptional circumstances, the court may request the

26   voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Rand v. Rowland, 113 F.3d 1520,

27   1525 (9th Cir. 1997).  Without a reasonable method of securing and compensating counsel, this court

28   will seek volunteer counsel only in the most serious and exceptional cases.

In the present case, the Court does not find the required exceptional circumstances. See Rand, 113 F.3d at 1525. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This court is faced with similar cases almost daily. Additionally, based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims. Id. Therefore, Plaintiff's request for the appointment of counsel is denied.

### E.     Motion to Exclude Defendants' Witnesses and Exhibits

Plaintiff moves to have Defendants' witnesses that were not involved in the incident and all documents that do not directly pertain to the incident to be excluded at trial. "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984). Plaintiff's motion to exclude evidence should be raised in a motion in limine. The procedure and time requirements for filing a motion in limine are set forth below.

### XI.     Stipulations

None anticipated.

### XII.     Amendments/Dismissals

None anticipated.

### XIII.     Settlement Negotiations

Plaintiff is willing to settle. Defendants state that it is unlikely that a settlement between the parties can be reached.

### XIV.     Agreed Statement

Defendants do not believe that a presentation of all or part of this action upon an agreed statement of facts is feasible or advisable.

1  **XV.**   **Separate Trial Of Issues**

2         As is this Court's standard practice, the Court will bifurcate the issue of punitive damages.

3  If the jury finds that Defendant is liable for punitive damages, the Court will conduct a second phase

4  of trial on the amount of punitive damages.

5  **XVI.**   **Impartial Experts - Limitation Of Experts**

6         Defendants do not believe that the Court needs to appoint any impartial expert witnesses.

7  **XVII.**   **Attorneys' Fees**

8         Plaintiff is representing himself in this action.   Since Plaintiff is not represented by an

9  attorney, he is not entitled to recover attorney fees should he prevail.  Gonzalez v. Kangas, 814 F.2d

10 1411, 1412 (9th Cir. 1987).

11        Defendants intend to seek attorney's fees and costs if they prevail.

12 **XVIII.**  **Further Trial Preparation**

13        **A.**     **Motions In Limine Hearing and Briefing Schedule**

14        Any party may file a motion in limine.   The purpose of a motion in limine is to establish in

15 advance of the trial that certain evidence should not be offered at trial.   Although the Federal Rules

16 do not explicitly provide for the filing of motions in limine, the court has the inherent power to hear

17 and decide such motions as a function of its duty to expeditiously manage trials by eliminating

18 evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n.4

19 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997).   The

20 court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving

21 party establishes that the evidence clearly is not admissible for any valid purpose.  Id.; Hawthorne

22 Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

23        All motions in limine must be served on the other party or parties, and filed with the court,

24 by February 13, 2012. Any motion in limine must clearly identify the nature of the evidence that the

25 moving party seeks to prohibit the other side from offering at trial.

26        Any opposition to a motion in limine must be served on the other party or parties, and filed

27 with the court, by February 23, 2012.

28        If any party files a motion in limine, the court will hear and decide such motions on the

morning of trial at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

**B.     Duty of Counsel to Pre-Mark Exhibits**

The parties are ordered to confer no later than February 10, 2012, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.     Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)     Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff February 23, 2012, one for use by the Courtroom Clerk and the other for the court; and

(b)     One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.     Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)     Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above. Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)     As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)    Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d)    Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.    Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies. However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**C.**    **Discovery Documents**

By February 23, 2012, each party shall file a list of all discovery documents the party intends to use at trial. The list shall indicate whether each discovery document has previously been lodged with the Clerk. If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by February 23, 2012.

**D.**    **Trial Briefs**

The parties are directed to file and serve a Trial Brief by February 23, 2012. Local Rule 285. The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in

limine, or in an opposition brief to a motion in limine.

### E.    Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by 4:00 p.m. on Thursday, February 23, 2012.

Further, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

### F.    Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by 4:00 p.m. on Thursday, February 23, 2012.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

### G.    Proposed Jury Instructions

The parties shall file and serve proposed jury instructions by 4:00 p.m. on Thursday, February 23, 2012.  Electronic filers shall also attach a copy of their proposed jury instructions to an e-mail, which the party shall send to:   awiorders@caed.uscourts.gov.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer after the trial confirmation hearing to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will

conduct its jury instruction conference during trial at a convenient time.

**H.**     **Proposed Verdict Form**

The parties shall file and serve a proposed verdict form by 4:00 p.m. on Thursday, February 23, 2012.

**I.**     **Use Of Videotape and Computers**

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on Thursday, February 23, 2012.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

**J.**     **Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

**K.**     **Order Of Witnesses**

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial

1  session.

2  **XIX.  Objections to Pretrial Order**

3       Any party may, within ten (11) calendar days after the date of service of this Order, file and

4  serve written objections to any of the provisions of this Order.  Such objections shall specify the

5  requested modifications, corrections, additions or deletions.

6  **XX.  Rules of Conduct During Trial**

7       **A.      General Rules**

8       1.    All participants in the trial shall conduct themselves in a civil manner.  There shall be

9             no hostile interchanges between any of the participants.

10      2.    All oral presentations shall be made from the podium, unless otherwise permitted by

11            the court.

12      3.    Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside

13            the presence of the jury should be done during recesses.

14      4.    Counsel shall advise their respective clients and witnesses not to discuss any

15            aspect of the case in the common areas of the courthouse accessible to the

16            jurors, such as the lobby, the elevators, the hallways and the cafeteria.

17      **B.      Jury Selection**

18      1.    The court will conduct voir dire to be supplemented by any written questions

19            submitted by counsel prior to trial and after the court has concluded its

20            questioning of the jury panel.  In some circumstances, the court may allow brief

21            direct questioning by counsel.

22      **C.      Opening Statements**

23      1.    Counsel may use visual aids in presenting the opening statement.  However, any

24            proposed visual aids shall be shown to opposing counsel before opening

25            statement.

26      **D.      Case in Chief**

27      1.    Counsel shall have his/her witnesses readily available to testify so that there are

28            no delays in the presentation of evidence to the trier of fact.

2. At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.** **Witnesses**

1. Before approaching a witness, counsel shall secure leave of court to approach the witness.

2. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.** **Exhibits**

1. All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3. The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

**G.** **Objections**

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated. The court will permit counsel to argue the matter at the next recess.

2. The court will not assume that any objection made also implies with it a motion to strike an answer that has been given. Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H.** **Closing Argument**

1. Counsel may use visual aids in presenting the closing argument. However, any proposed visual aids shall be shown to opposing counsel before closing

1    argument.

2

3

4    **FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS**

5    **FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS**

6    **ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY**

7    **PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.**

8    IT IS SO ORDERED.

9

     Dated:   February 1, 2012

10                                                              CHIEF UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28